IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOE MEADOWS, )<br>)<br>      **Plaintiff,** )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>**Acting Commissioner of the Social** )<br>**Security Administration,** )<br>)<br>      **Defendant.** ) | Case No. CIV-22-184-GLJ |

## OPINION AND ORDER

Claimant, Joe Dean Meadows, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a

five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairments *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was sixty-one years old at the time of the administrative hearing. (Tr. 37, 62). He completed high school and three years of undergraduate study. (Tr. 263). He has past work experience as an asbestos removal worker. (Tr. 50). Claimant alleges an inability to work since October 1, 2020, due to limitations imposed by a stroke, right arm and right leg problems, diabetes, high blood pressure, and fatigue. (Tr. 12).

## Procedural History

On December 18, 2020, Claimant protectively applied for disability insurance benefits and supplemental security income under Title II (42 U.S.C. § 401, *et seq*.) and Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. On January 19, 2022, Administrative Law Judge ("ALJ") Joseph Doyle conducted an administrative hearing and entered an unfavorable decision on February 2, 2022. (Tr. 29, 37). The Appeals Council denied review, making the ALJ's opinion the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five (Tr. 28-29). At step two he determined that Claimant had the severe impairments of cerebrovascular accident, blindness involving the left eye, and hypertension. (Tr. 15). He found at step three that Claimant did not meet any Listing. (Tr. 21). At step four he found that Claimant had the residual functional capacity ("RFC) to perform medium work except that he could not perform work that requires depth

perception, could only occasionally climb ladders, ropes, stairs, or ramps and only occasional exposure to hazards, defined as work with machinery with moving mechanical parts, use of commercial vehicles and exposure to unprotected heights. (Tr. 22). The ALJ concluded that, although Claimant could not return to his previous work, there was work he could perform in the national economy such as laundry worker and dining room attendant. (Tr. 27-28).

## Review

Claimant contends that the ALJ erred by failing to adequately account for his vision problems when formulating the RFC. Specifically, he contends that the ALJ substituted his own judgment for that of the medical providers, failed to fully develop the record, improperly considered the opinion of a medical provider, and improperly discounted Claimant's testimony.

The relevant medical evidence reveals that Claimant lost his left eye in an industrial accident in 1980. (Tr. 348). On December 4, 2010, Claimant underwent a Mental Status Examination for a previous application with Beth Jeffries, Ph. D., during which Claimant wore dark sunglasses because of a reported light sensitivity in his remaining eye. *Id.* However, Dr. Jeffries noted that they were in a dimly lit room, with no windows or outside light, and opined that the sunglasses were more likely related to his provisional antisocial personality disorder diagnosis. *Id.* Ten years later, on October 3, 2020, Claimant presented to the ER with stroke symptoms and was treated for an acute ischemic stroke. (Tr. 402). While his treatment team noted weakness in the right arm and leg, they found no vision issues in his remaining eye. (Tr. 408-09). During follow-up appointments from October

19, 2020, through November 15, 2021, healthcare providers consistently noted Claimant's vision as normal or else impaired only by his left eye blindness. (Tr. 360, 364, 269, 393, 396, 399, 404, 578, 629, 633, 847, 856, 870, 905). On June 31, 2021, Claimant submitted a Function Report in which he indicated that he does not have problems seeing, is able to drive and shop for himself, and does not use glasses or contact lenses. (Tr. 306, 308-09). On November 29, 2021 (thirteen months after Claimant's stroke), Patricia Smith, APRN, completed a Medical Source Statement in which she opines that, due to left eye blindness, Claimant would be unable to avoid ordinary hazards in the workplace, read very small print, or determine differences in shape and color of small objects, but *could* read standard print or view a computer screen. (Tr. 876). She also notes that Claimant could never operate a motor vehicle, and could never be exposed to unprotected heights, moving mechanical parts, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, or vibrations. (Tr. 877).

State examiners determined initially and upon reconsideration that Claimant's medically determinable impairments, considered singly and in combination, did not constitute a severe impairment. (Tr. 67-68, 79, 87, 93).

At the administrative hearing, Claimant testified about his various impairments and how his stroke impacted his functioning. (Tr. 37-55). He testified that his left eye is prosthetic and that the vision in his remaining eye is "not as good as it was before the stroke," that he could no longer read standard newsprint, and could only read from a computer screen if he enlarged the font (Tr. 47). When asked what he does to pass the time he stated that he watches television. (Tr. 49).

In his written opinion at step four, the ALJ summarized Claimant's hearing testimony and the evidence in the record. (Tr. 22-25). As relevant to this appeal, the ALJ was unpersuaded by the state examiners' opinions, finding instead that Claimant has three severe impairments, including left-eye blindness. (Tr. 25). He likewise found the medical source statement of APRN Smith unpersuasive; the ALJ agreed Claimant's left eye blindness was a limitation but emphasized that "there have been no objective abnormalities documented regarding right vision." (Tr. 26). He thus determined that limitations consistent with depth perception and hazard limits, only, were appropriate to account for Claimant's monocular vision. The ALJ ultimately concluded that Claimant was not disabled at step five.

*APRN Smith's Opinion*. Claimant first asserts that the ALJ's reasons for rejecting APRN Smith's opinion are unsupported by the law. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the

other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Court finds that the ALJ's treatment of APRN Smith's opinion was sufficient. At step four, the ALJ repeatedly noted APRN Smith's opinion and findings and discussed his reasons for finding it unpersuasive, including reasons for imposing the visual limitations he found. Specifically, the ALJ noted internal inconsistencies, such as an absence of any mention of right-eye impairment, that undermined the supportability of her opinion, and further found it inconsistent with the record as a whole. (Tr. 20, 24, 26). The Court, therefore, finds that the ALJ properly considered APRN Smith's opinion in accordance with the appropriate standards.

*Further limitations for left-eye blindness*. Claimant further contends that the ALJ's RFC does not adequately account for the limitations imposed by Claimant's left-eye blindness because it only accounts for a lack of depth perception, notwithstanding that the ALJ also imposed a limitation from hazards. Claimant implies that additional limitations are warranted, but points to no evidence beyond APRN Smith's opinion that would provide

7

further limitations. The inquiry upon review is not whether substantial evidence supports Claimant's interpretation of the record, but whether it supports the ALJ's. *See Burns v. Chater*, 105 F.3d 669 at *2 (10th Cir. 1997) ("While we acknowledge that there is some evidence in the record favoring claimant's interpretation of this case, we reiterate that our task on appeal is not to reweigh the evidence . . . but to review the record to ensure that substantial evidence supports the decision of the ALJ."). The Court has performed an extensive review of the entire record and finds that substantial evidence supports the ALJ's RFC as to the limitations imposed by Claimant's visual impairment.

*No objective evidence remaining*. Claimant next argues that by discounting the opinion of APRN Smith, the ALJ left himself with no objective medical evidence from which to assess Claimant's RFC regarding visual impairments, and thus fabricated that portion of the RFC. Claimant further asserts that the ALJ admitted that the record contained no evidence regarding the effect of Claimant's visual impairment. This argument, too, is unpersuasive. The portion of the opinion Claimant refers to here states "while [Claimant] alleges that his right vision was also not as good as in the past, the record lacks observation of any *right vision* impairment." (Tr. 25) (emphasis added). The record, outside of APRN Smith's opinion, is replete with evidence that Claimant's right-eye vision is unimpaired. (Tr. 360, 364, 269, 393, 396, 399, 404, 578, 629, 633, 847, 856, 870, 905). The Court thus finds Claimant's assertion that the ALJ was "playing doctor" unfounded. *See Sylvia Lee v. Berryhill*, 2017 WL 2892338, at *5 (W.D. Okla. June 15, 2017) (*holding* that an ALJ does not "play doctor" where the ALJ evaluates a claimant's alleged symptoms against the objective medical evidence of record).

*Failure to develop the record by ordering a Consultative Examination*. Claimant next contends that the ALJ failed to properly develop the record. Claimant asserts that the ALJ should have ordered a Consultative Examination to determine to what extent Claimant's left-eye blindness limited his ability to work. A social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360-361 (10th Cir. 1993) (*citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). However, the ALJ does not have a duty to order a consultative examination and therefore has "broad latitude" in deciding whether or not to do so. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (*citing Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial[.]" *Id.* [citation omitted]. "[T]he ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169. "Thus, the relevant issue before this Court is whether the plaintiff demonstrated there is sufficient evidence of a reasonable possibility that a disability exists, and that a consultative exam would be of material assistance in resolving the issue of disability." *Baraesheia M. P. v. Kijakazi*, 2021 WL 2954003, at *6 (N.D. Okla. July 14, 2021).

Here, the claimant did not raise the issue at the administrative level, and there is nothing in the evidence to indicate that further evaluation was necessary. *See* 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). Claimant's own Function Report endorses no issues with vision and the Court can find no record of an endorsement of right-eye vision problems prior to those made at the hearing. (Tr. 306). *See Howard v. Barhnart*, 379 F.3d 945, 948 (10th Cir. 2004) ("We disagree with claimant's implicit argument that the agency, not the claimant has the burden to provide evidence of claimant's functional limitations."). While additional evidence may have been helpful, Claimant has not met his burden to establish the necessity of a consultative examination here. *See, e. g.*, *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (finding "no need" to develop the record with a consultative examination where "sufficient information existed" for the ALJ to make the disability determination.).

*Consistency evaluation*. Claimant similarly contends that the ALJ erred in his consistency analysis of Claimant's symptoms by using a lack of treatment records for right vision impairment against Claimant where Claimant had difficulty seeking treatment due to a lack of insurance and distance from a free treatment center. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain and/or consistency:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the

>  extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in alignment but characterizes the evaluation as a three-part test. *See, e.g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[3] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the

---

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[3] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-594 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-546 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

Under federal regulations, an ALJ may not draw inferences from a claimant's failure to seek medical treatment without considering the claimant's explanations, such as inability to afford treatment. Soc. Sec. R. 96-7p, 1996 WL 374186, at *7-8 (1996). Here, the ALJ specifically noted that Claimant had been unable to pursue occupational or physical therapy due to a lack of insurance and financial difficulty; however, he noted that Claimant was able to obtain care and found that most of Claimant's exams reflected largely normal findings. (Tr. 23). Reviewing courts generally take the ALJ "at [his] word" when he declares he has considered a matter, and nothing in this case suggests a departure from that practice. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Further, the Court is unpersuaded by Claimant's interpretation of the record, as there is ample evidence of normal right-eye function. (Tr. 360, 364, 269, 393, 396, 399, 404, 578, 629, 633, 847, 856, 870, 905). Additionally, while Claimant may have had obstacles in seeking free care, the record indicates that he had some success in overcoming those obstacles and received regular care throughout the relevant period. *Id.* During these visits Claimant did not indicate he had any trouble with his right eye, and medical providers repeatedly noted his vision as unremarkable beyond his left-eye blindness. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) ("The ALJ discredited Mr. Kelley's assertion that he needed a two-hour nap each day, noting his failure to report such a restriction to Dr. Dandridge. The

12

ALJ's findings are well-supported by the record."). The Court finds no error in the ALJ's analysis of the consistency of Claimant's symptoms with the record.

The ALJ thoroughly discussed the medical record in this case, gave reasons for his RFC determination, and ultimately found that Claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the Court finds that the ALJ's opinion is supported by substantial evidence, and the correct legal standards were applied.

## Conclusion

The Court finds that the decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Accordingly, the decision of the Commissioner is AFFIRMED.

**DATED** this 22nd day of August, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**